# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ARDELLA L. LAUDERDALE, | : | |
| Plaintiff, | : | |
| | : | Case No. 3:16-cv-00013 |
| vs. | : | |
| | : | Magistrate Judge Sharon L. Ovington |
| NANCY A. BERRYHILL, | : | (by full consent of the parties) |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## DECISION AND ORDER

## I.  Introduction

Plaintiff Ardella L. Lauderdale brings this action challenging Administrative Law Judge (ALJ) Gregory G. Kenyon's decision to deny her application for Supplemental Security Income.  She asserts that she is under a benefits-qualifying disability due to asthma, high blood pressure, and carpal tunnel syndrome.  ALJ Kenyon's decision, she contends, is flawed by mistakes in his evaluation of the opinions of her long-time treating physician Dr. Martin Schear.  She further contends that ALJ Kenyon's hypothetical questions posed to the vocational expert failed to accurately reflect her mental work limitations.  And, she argues, ALJ Kenyon erred in assessing her credibility.  She seeks an Order remanding this case for an award of benefits or, at a minimum, for further proceedings.

The Commissioner contends that the ALJ reasonably weighed Dr. Schear's opinions; reasonably evaluated Plaintiff's mental work limitations and thus framed accurate hypothetical questions; and, reasonably assessed her credibility. The Commissioner seeks an Order affirming ALJ Kenyon's decision.

## II.    Background

In January 2007, the Social Security Administration denied a previous application for benefits Plaintiff had filed. On June 18, 2007, she applied again for Supplemental Security Income. That application and its related evidence were at issue in ALJ Kenyon's decision and are at issue in this case.

Yet, before Plaintiff brought the present case, she went through one round of administrative denials of her application, including a previous ALJ's decision that she was not under a benefits-qualifying disability. Plaintiff appealed that decision to this Court but before the case reached the decisional stage, the parties stipulated to a remand for further administrative proceedings. (Doc. #7, *PageID* #s 1712-13). On remand, ALJ Kenyon issued his January 2015 non-disability decision—again, the decision presently before this Court. (Doc. #8, *PageID* #s 1599-1620).

On the date Plaintiff applied for benefits in January 2007, she was considered a "younger" person under social security law. When she reached age fifty in January 2010, her age category changed to an individual "closely approaching advanced age. She has a "limited" education, having completed the eleventh grade in high school. She worked in the past as a commercial cleaner.

2

### A. Plaintiff's Testimony

Plaintiff testified in a hearing before ALJ Kenyon (in November 2014) that she is 5′4″ inches tall and weighs 265 pounds. *Id.* at 1653. She lives with her adult son and two teenage grandchildren. *Id.* at 1654. She has a driver's license but no longer drives due to sensitivity to bright light. *Id.* She has difficulty reading due to vision problems although she can read large print. *Id.* at 1655. She last worked a full-time job in 1999. She does not recall when she last worked a part-time job but acknowledged if she had worked at all, she was doing a part-time janitorial job in 2012. *Id.* at 1655-56.

Plaintiff testified that she began having asthma attacks when she turned 40 years old. *Id.* at 1656-57. Strong perfumes and cold temperatures during winter aggravate her asthma. She uses an inhaler between 2 to 4 times a day and a nebulizer about once a week. *Id.* at 1657.

Plaintiff described her back pain as starting in her lower back and extending down her legs. *Id.* at 1659. She estimated her pain severity at 8 on a 0 to 10 scale, with 10 being the most intense pain. *Id.* Treatment for her back has included going to a chiropractor who gave her exercises to do at home. *Id.*

Plaintiff testified that she has been diagnosed with fibromyalgia. She has pain all over her body with the most intense pain at her shoulders. *Id.* at 1659-60. She has difficulty lifting her arms over her head. She has reduced manipulative ability and diminished grip strength due to carpal tunnel syndrome in both hands. *Id.* at 1660-61. She also suffers from daily headaches with migraine headaches about 2 times per week,

3

lasting about 2 days. *Id.* at 1661-62. She has cataracts with reduced visual acuity. *Id.* at 1662. Her eye problems sometimes make it difficult for her to watch TV. She doesn't "even fool with reading really" because of both eye and understanding problems. *Id.* at 1662, 1670. She explained, "I understand some things that I read, but it's mostly I can't—when I [read] I see shadows, as I told my doctor I see shadows and a lot of spots." *Id.* at 1670-71. She wears glasses but they were broken at the time of the ALJ's hearing. *Id.* at 1663. Plaintiff has chest pain and understands that she has 55 percent blockage in her left artery. She uses nitroglycerin patches and "pain patches." *Id.* at 1672. And, she has high blood pressure, which causes her feet and hands to swell, and she has diabetes. *Id.* at 1672-73.

As to mental health difficulties, Plaintiff has experienced auditory hallucinations since she was 20 years old. *Id.* at 1663. She hears them every day. She has self-harming thoughts, sometimes when the holidays are approaching. She experiences crying spells and difficulty concentrating due to depression. *Id.* at 1664-65. She also experiences panic attacks when she thinks people are following her. *Id.* at 1665-66. She takes medication that makes her sleepy and causes her to sleep during the daytime. When she wakes up at night, medication helps calm her. *Id.* at 1666. She does not like to be around crowds of people and leaves the house only for doctor's appointments. *Id.*

Plaintiff estimated that she can lift about 10 pounds, and she is limited to about 20 to 30 minutes of standing because her back will start hurting. She can sit about 30-35

minutes.  *Id.* at 1667-68.  Walking from her front door to the car causes her to get tired.
*Id.* at 1668.  She becomes short of breath climbing stairs due to her asthma.  *Id.*

Plaintiff is able to wash dishes about once every 2 weeks because she cannot stand
for long without her back starting to hurt.  Her granddaughter helps her with chores.  She
does not have hobbies.  During an ordinary day, Plaintiff sleeps (a medication side effect)
unless she has a doctor's appointment.  *Id.* at 1668-69.  When asked why she cannot work
a full-time job, she answered, "Standing up, my back."  *Id*. at 1669.

### B.    Medical Evidence

Plaintiff has provided a well-written and accurate description of the pertinent
medical evidence, and there is no need to repeat it here.  (Doc. #11*, PageID* #s 2221-25).
Yet, given the parties' present contentions, Dr. Martin Shear's opinions are worth
exploring in detail.

In December 2007, Dr. Martin Schear—Plaintiff's long-time treating family
physician—completed forms addressing her work abilities and limits.  (Doc. #7, PageID#
1134-36).  He listed Plaintiff's diagnoses as asthma, anxiety, fibromyalgia, GERD, and
hypertension.  He checked boxes opining that Plaintiff could stand/walk and sit 1 hour,
for 30 minutes intervals, during an 8-hour workday; and she could not lift more than 10
pounds occasionally or frequently.  Dr. Schear believed that Plaintiff was extremely
limited in her ability to push/pull, bend, reach, handle, and repetitive foot movements.  In
support of these opinions, Dr. Schear wrote, "fibromyalgia and asthma."  *Id.* at 1335.  He
also checked boxes indicating that Plaintiff was "unemployable" and that he expected

5

Plaintiff's physical and/or mental functional limitations (specifically, the ones he identified) to last 12 months or more. *Id.*

In response to interrogatories in April 2009, Dr. Schear summarized the medical problems he has treated Plaintiff for as follows: "Patient has been treated for multiple arthralgia, asthma, chronic sinusitis, obstructive sleep apnea, low back pain, depression, headaches, CTS, Gerd, urinary frequency, hypokalemia, and fibromyalgia." *Id.* at 1476. He opined that Plaintiff could not be prompt and regular in work attendance "due to multiple medical problems." *Id.* He believed that fibromyalgia, multiple arthralgia, and asthma limited Plaintiff to lifting and carrying 6 to 10 pounds. *Id.* at 1478. He noted that fibromyalgia, multiple arthralgia, and asthma limited her to 1 hour of standing/walking and 4 to 5 hours of sitting (½ hour without interruption) during an 8-hour workday. *Id.* at 1478-79. He also opined that fibromyalgia, multiple arthralgia, and asthma completely prevented Plaintiff from climbing, balancing, stooping, crouching, kneeling, or crawling. *Id.* at 1479-80. And these problems precluded her from working at heights, around moving machinery, in temperature extremes, and in humidity. *Id.* at 1480-81.

Dr. Schear concluded that Plaintiff could perform sedentary work activity but not light work, and he anticipated that on average she would miss more than 3 days of work per month due to her impairments or treatment. *Id.* at 1482.

## III.   Supplemental Security Income and The ALJ's Decision

Plaintiff's eligibility to receive Supplemental Security hinged on whether she was under a "disability" as defined by social security law. *See* 42 U.S.C. §§ 1381a,

1382c(a)(3)(A);  *see also Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  To determine if she was under such a disability, ALJ Kenyon evaluated the evidence under the Social Security Administration's 5-step evaluation procedure.  20 C.F.R. §§ 416.920(a)(4).  Moving through step 1, the ALJ found at step two that Plaintiff's severe impairments included "asthma, mild coronary artery disease, mild obstructive sleep apnea, fibromyalgia, obesity, history of (migraine versus muscle tension) headaches, a history of cataracts with some vision deficits, affective disorder with depressive features, anxiety disorder."  *Id.* at 1604.

ALJ Kenyon found at step 3 that Plaintiff's impairments did not automatically entitle her to benefits under the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Doc. #8, *PageID* #s 1609-10).  Doing so, he determined that Plaintiff's impairments did not meet or medically equal the criteria in Listings section 2.02 (loss of visual acuity); section 2.03 (contraction of the visual fields in the better eye); section 2.04 (loss of visual efficiency); section 3.03 (asthma); section 3.10 (sleep-related breathing disorders); section 4.04 (ischemic heart disease); section 11.00, et seq. (neurological disorders); section 12.04 (affective disorders); section 12.06 (anxiety-related disorders).  *Id.* at 1609-10.

At step 4, ALJ Kenyon found that the most Plaintiff could do despite her impairments—her residual functional capacity, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)—was light work[1] tempered by the 11 limitations:

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying

1. no more than occasional crouching, crawling, kneeling, stooping and climbing ramps or stairs;
2. no climbing of ladders, ropes or scaffolding;
3. no work around hazards such as unprotected heights or dangerous machinery;
4. no concentrated exposure to temperature extremes, wet or humid areas, or respiratory irritants;
5. no operation of automotive equipment;
6. only unskilled simple repetitive tasks;
7. no more than occasional contact with co-workers and supervisors;
8. no public contact;
9. no jobs involving teamwork or tandem tasks;
10. no fast-paced production work or work involving strict production quotas;
11. limited to performing jobs in a relatively static work environment with very little, if any, change in job duties or work routine from one day to the next.

*Id.* at 1611.

Given these abilities and limitations, the ALJ found (step 4) that Plaintiff could not perform her past relevant work. And, given these abilities and limits plus Plaintiff's younger age, her limited education, and her work experience, the ALJ determined (step 5) that she could perform a significant number of jobs that exist in the national economy. These doable jobs, according to the ALJ, included marker, warehouse checker, and copy machine operator. *Id*. at 1619-20. The ALJ's step-5 finding dictated his final determination that Plaintiff was not under a disability and not eligible for benefits. *Id*. at 1620.

## IV. **Standard of Review**

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399,

---

of objects weighing up to 10 pounds...." 20 C.F.R. § 416.9567(b).

406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Blakley*, 581 F.3d at 406; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, whether the ALJ applied the correct legal criteria, may result in reversal despite the presence of substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

9

V.    **Discussion**

A.    **Dr. Schear**

Plaintiff argues that the ALJ erred in weighing the opinions of Dr. Shear, her long-time treating and primary-care physician.  Plaintiff acknowledges that the ALJ rejected Dr. Schear's opinions because they were allegedly "contradictory."  She contends that the ALJ considered Dr. Shear's opinions that pre-dated her current application for benefits and "this pre-application evidence is remote and not particularly relevant to whether [Plaintiff] was disabled during the current application period."  (Doc. #11, *PageID* #2231).  Plaintiff also argues that Dr. Schear's opinions in December 2007 are not inconsistent with his opinions in April 2009.  She points out that at both times Dr. Schear indicated (1) Plaintiff had the same limitations in her abilities to stand/walk and lift/carry; (2) she was her extremely limited in bending, reaching, handling, and repetitive foot movements; (3) she was never to climb, balance, stoop, crouch, kneel, or crawl; and she was extremely limited in her ability to reach, handle, finger, feel, and push/pull. Plaintiff therefore concludes that the ALJ failed to show that the relevant evidence is contradictory.  The ALJ also erred in finding that objective medical evidence did not support Dr. Shear's opinion particularly as Plaintiff was treated for a myriad of severe and worsening impairments, as discussed in the voluminous record—indeed it is, at just over 2,200 pages—Plaintiff's Statement of Facts, and the objective evidence.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions.  "Key among these is that greater deference is generally

10

given to the opinions of treating physicians than to those of non-treating physicians,

commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations

omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight"
> if two conditions are met: (1) the opinion "is well-supported
> by medically acceptable clinical and laboratory diagnostic
> techniques"; and (2) the opinion "is not inconsistent with the
> other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20

C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If a treating physician's opinion is not controlling, "the ALJ, in determining how

much weight is appropriate, must consider a host of factors, including the length,

frequency, nature, and extent of the treatment relationship; the supportability and

consistency of the physician's conclusions; the specialization of the physician; and any

other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The regulations also require ALJs to provide "good reasons" for the weight placed

upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good

reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight

placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. Rul. No. 96-2p,

1996 WL 374188, at *5 (July 2, 1996)). The goal is to make clear to any subsequent

reviewer the weight given and the reasons for that weight. *Id*. And, substantial evidence

must support the reasons for the weight the ALJ placed on a treating source's opinions.

*Id.*

ALJ Kenyon found Dr. Schear's opinion "to be contradictory as well as unsupported by compelling objective medical evidence or clinical findings. As such, this opinion evidence is entitled to little or no weight. Dr. Schear provided no logical medically determinable foundation for his purported and rather extensive limitations…." *Id.* at 1615.

Beginning with the ALJ's finding that Dr. Schear's opinions contradictory, Plaintiff objects to the ALJ's consideration of evidence that predated the pertinent time period, which began on June 18, 2007, the date she applied for Supplemental Security Income. While the ALJ considered evidence predating June 18, 2007 and that at least some of that evidence can be fairly described as remote to the pertinent time period, the ALJ also considered evidence—including Dr. Shears' opinions in December 2007 and April 2009—within the pertinent time period. The ALJ, placed more significance on the lack of objective evidence supporting Dr. Shears' opinions than he placed on any remote evidence. He accurately explained, by way of example:

> [T]here is no musculoskeletal basis or neurological basis to limit the claimant's exertional (i.e., sitting, standing, walking, lifting) capacity to the extent reported by Dr. Shear. The evidence certainly does not document any impairment that would result in an inability to sit longer than one hour during any given eight-hour workday or longer than 30 minutes without interruption nor is there any compelling evidence to establish an inability to stand or walk to the extent described by Dr. Schear. Likewise, there is no convincing evidence of any impairment that would cause 'extreme' limitation in claimant's capacity for bending, reaching, handling, repetitive foot movements, and pushing/pulling….

12

*Id*. at 1615.

One problem emerges at this point in the ALJ's decision. He explained, "It can only be assumed that Dr. Schear based his various excessive (and somewhat inconsistent) assessments of the claimant's functional capabilities on the claimant's subjective complaints at a particular time." *Id*. This is not a reasonable assumption because Dr. Schear did not indicate in any way that he relied only on Plaintiff's subjective reports and because physicians are trained to both consider and investigate subjective reports as opposed to blindly accepting them on face value. This problem, however, is not fatal to the ALJ's evaluation of Dr. Schear's opinion in light of the ALJ's other reasons for discounting his opinions. The ALJ continued to accurately explain these reasons as follows:

> Dr. Schear's assertion that the claimant would likely miss work more than three times per month due to her impairments or treatment for such impairments is entirely speculative and lacking any support in objective medical evidence or clinical findings. It is noteworthy that Dr. Schear described the claimant's primary physical impairments are asthma and fibromyalgia but, as detailed above,[2] those conditions are, at most only mild and not particularly limiting (especially to the extent indicated by Dr. Schear). Medical records clearly do not indicate that the claimant experiences pulmonary symptoms, cardiac symptoms, generalized pain, headache complaints, vision deficits, or any other physical health problems that would restrict an individual to the degree described by Dr. Schear….

---

[2] Previously, the ALJ found the record "bereft of any evidence pertaining to episodes of asthmatic symptom exacerbation." *Id*. at 1604 (see exhibits cited therein). The ALJ addressed Plaintiff's diagnosis of fibromyalgia and noted she was treated with only conservative measures. *Id*. at 1604-05 (see exhibits cited therein). Her rheumatologist, Dr. Schriber, prescribed aerobic conditioning and stretching as opposed to limiting Plaintiff's exertional capacity. *Id*.

*Id.* In addition to these deficiencies in Dr. Schear's opinions, he did not provide any reference to particular evidence in support of his December 2007 and April 2009 opinions, and his explanations for those opinions referred merely to Plaintiff's health problems without providing meaningful insight into any connection between her health problems and his opinions. *See* Doc. 7, *PageID* #s 1134-40, 1475-82. These were proper grounds to discount Dr. Schear's opinions; his diagnoses alone do not support his opinions. *See Brown v. Comm'r of Soc. Sec.,* 156 F.3d 1228 (6th Cir. 1998) ("The mere diagnosis of a condition says nothing about the severity of the condition."); *see also Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.); *Hill v. Comm'r of Soc. Sec.,* 560 F. App'x 547 (6th Cir. March 27, 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."). The ALJ's reasoning was also sound in light of Dr. Schear's missing explanations for his opinions. Social security regulations explain, "The better an explanation a source provides for an opinion, the more weight we will give that opinion...." 20 C.F.R. § 404.1527(c)(3); *see White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 286 (6th Cir.2009) ("[C]onclusory statements from physicians are properly discounted by ALJs."); *see also* 20 C.F.R. §416.927 (c)(4) ("Generally, the more consistent an opinion is with the records as a whole, the more weight we will give to that opinion.").

Plaintiff contends that the ALJ erred in finding that objective medical evidence did

not support Dr. Shear's opinion particularly when Plaintiff was treated for a myriad of severe and worsening impairments, as discussed in the voluminous record—indeed it is, at just over 2,200 pages—in Plaintiff's Statement of Facts, and in light of objective evidence. Plaintiff further argues that Dr. Schear's opinions in December 2007 are not inconsistent with his opinions in April 2009. She points out that at both times Dr. Schear indicated (1) Plaintiff had the same limitations in her abilities to stand/walk and lift/carry; (2) she was her extremely limited in bending, reaching, handling, and repetitive foot movements; (3) she was never to climb, balance, stoop, crouch, kneel, or crawl; and she was extremely limited in her ability to reach, handle, finger, feel, and push/pull. These contentions miss the mark.

The problems discussed above—the absence of objective evidence in support of Dr. Schear's opinions and the lack of significant explanation in support of his opinions— are not negated by the presence of Plaintiff's lengthy medical history, the subjective findings in the record generally referred to by Plaintiff, or the consistency in Dr. Schear's opinions. Substantial evidence supports the ALJ's valid reasons for declining to place controlling weight on Dr. Schear's opinion and for instead placing little or no weight on his opinions. Consequently, the presence of substantial contrary evidence is analytically insignificant. *See Blakley*, 581 F.3d at 406 ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (citation omitted).

15

Accordingly, Plaintiff's contentions regarding the ALJ's evaluation of Dr. Schear's opinions lack merit.

### B.    Hypothetical Questions

The ALJ found at step 3 of his sequential evaluation that Plaintiff had "moderate" limitation in her ability to maintain concentration, persistence, or pace.  (Doc. #8, *PageID* #1610).  Plaintiff argues that the ALJ's hypothetical question to the vocational expert failed to adequately account for this moderate limitation.

"In order for a vocational expert's testimony to constitute substantial evidence that a significant number of jobs exists in the economy, the question[s] must accurately portray a claimant's physical and mental impairments."  *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir. 2010).  "[T]he ALJ is only required to incorporate into the hypothetical questions those limitations that have [properly] been accepted as credible," *McIlroy v. Comm'r of Soc. Sec.,* 42 F. App'x 738, 739 (6th Cir. 2002), and "is not obligated to include unsubstantiated complaints and restrictions in his hypothetical questions," *Brewer v. Social Sec. Admin.,* 39 F. App'x 252, 254 (6th Cir. 2002).

The ALJ's hypothetical questions to the vocational expert asked about the number of jobs available to a person with Plaintiff's residual functional capacity for light work with many limitations.  The limitations the ALJ listed for the vocational expert to consider matched those he listed in Plaintiff's residual functional capacity, including limitations to "unskilled, simple, repetitive tasks …," and "no fast paced production work

16

or strict production quotas." (Doc. #8, *PageID* #1675).

Plaintiff views these limitations as inadequate to account for her moderate limitation in concentration, persistence or pace. She relies on four cases, two of which are cases decided by district courts located within the geographic boundary of the Sixth Circuit: *Edwards v. Barnhart*, 383 F. Supp.2d 920, 933 (E.D. Mich. 2005) and *Mays v. Comm'r of Soc. Sec.*, No. 1:14CV800, 2015 WL 1810391, *7 (N.D. Ohio April 21, 2015). Neither case is persuasive here.

In *Edwards*, the ALJ's hypothetical questions did not account for the plaintiff's moderate limitation in her ability to concentrate, persist, and keep pace. The inadequate hypothetical included limitations to "co-workers, supervisors and the public," and to "jobs entailing no more than simple, routine, unskilled work." 383 F. Supp.2d at 930. The district court reasoned that the plaintiff "may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." *Id*. The limitations in the *Edwards* hypothetical were narrower than the limitations ALK Kenyon presented to the vocational expert in the present case. Here, the ALJ included the limitations identified in *Edwards*, plus the limitation to "a relatively static work environment in which there is very little, if any, changes in the job duties or the work routine from one day to the next." (Doc. #8, *PageID* # 1675). Although it is a close question, by including this detailed limitation into the hypotheticals, ALJ Kenyon narrowed the *Edwards* hypotheticals to accurately describe a worker with Plaintiff's moderate limitations in

17

concentration, persistence, and pace.  *Cf. Steed v. Astrue,* 2012 WL 1097003, at *9 (N.D. Ohio 2012) (finding the plaintiff's moderate limitation in concentration, persistence, and pace included within hypothetical about "a person … limit[ed] to light work…, the work would be simple and routine in nature, there would be little changes in the workplace, there would be no interaction with the public and occasional interaction with co-workers….")

*Mays* is likewise not persuasive because its facts are not similar to the present case.  The district court in *Mays* observed, "Limiting someone to jobs that do not require strict productions quotas does not fully address the issue of poor concentration."  *Mays,* 2015 WL 1810391, at *7.  In the present case, the issue is a moderate limitation in concentration rather than the more limited "poor concentration" referred to in *Mays*.  In addition, the context of this comment in *Mays* was not during a debate over hypothetical questions but rather in a harmless-error analysis.  *Mays,* therefore, does not support Plaintiff's contentions in this case.

Plaintiff's two remaining extra-circuit cases, *Whack v. Astrue*, No. 06-4917, *8-*9 (N.D. Pa. Feb. 26, 2008) and *Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015) are similarly distinguished from the present case and are neither controlling nor persuasive in this case.

Accordingly, Plaintiff's challenges to the ALJ's hypothetical questions lack merit.

18

**C.     Plaintiff's Credibility**

Plaintiff argues that the ALJ failed to properly evaluate the credibility of her statements and complaints.  She reasons that the ALJ failed to complete a thorough evaluation of the record, failed to explain the weight accorded to her specific symptoms, failed to consider the side effects of her medications, especially her sleepiness during the day.

To be clear at the outset, there is no doubt in the record that Plaintiff experiences daily symptoms including pain.  As in many social security cases, the record in this case posed difficult questions to the ALJ:  What did the evidence reveal about Plaintiff's pain levels?  How credible was Plaintiff when she reported her pain to medical sources and described her pain to the ALJ.  Such questions can be vexing, all the more so here where Plaintiff has attempted for years (she applied for benefits in June 2007, and her previous January 2007 application was denied) to convince the Social Security Administration that her pain is real, serious, and disabling.  Because such vexing questions fall first to the ALJ, rather than this Court, the ALJ "has a unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  And, because of this, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference …." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987)); *see Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 542 (6th

Cir. 2007); *Buxton*, 246 F.3d at 773. However, an ALJ's assessment of credibility must be supported by substantial evidence. *Cruse,* 502 F.3d at 542 (citing *Walters,* 127 F.3d at 531).

Congress mandates that a social security applicant's subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability…." 42 U.S.C. § 423(d)(5)(A). As a result, Plaintiff's testimony and reports about her pain levels and other symptoms, while relevant to determining whether she is under a disability, cannot by themselves establish that she is under a disability. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Credibility assessments are conducted under a two-part analysis:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers,* 486 F.3d at 247. When evaluating the intensity, persistence, and limiting effects of a Plaintiff's symptoms, social security regulations require ALJs to consider the following factors: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the Plaintiff takes or has taken to alleviate symptoms; treatment, other than medication, the Plaintiff receives or has received for relief of symptoms; any measures the Plaintiff uses or has used to relieve symptoms; and other

20

factors concerning the Plaintiff's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

Soc. Sec. Rul. No. 96-7p, 1996 WL 374186, at *4 (Soc. Sec. Admin. July 2, 1996).[3] "Social Security Ruling 96-7p also requires the ALJ explain his credibility determinations in his decision such that it must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248 (internal quotation and footnote omitted); *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so.") (citation omitted).

When addressing Plaintiff's credibility, the ALJ discussed a variety of factors under the correct legal criteria, and substantial evidence supports ALJ's credibility findings. For example, as noted above, the ALJ observed that the objective medical evidence did not support Plaintiff's allegations. (Doc. #8, *PageID* # 1612); *see* 20 C.F.R. § 404.1529(c)(2) (ALJ considers objective medical evidence when assessing credibility).

The ALJ also considered other probative factors. He found several inconsistencies between Plaintiff's testimony and her reports to her physicians. For example, he noted that Plaintiff testified she had heard voices every day since age 20 (Doc. #8, PageID# 1663), yet review of mental health treatment records reveals she had no delusions or

hallucinations, particularly when appropriately medicated.  (Doc. #7, *PageID* # 1182; Doc. #8, *PageID*#s 1608, 1617, 1999-2009, 2025, 2027, 2035.  In addition, Plaintiff testified to having daily headaches and migraines that essentially would affect her 4 out of 7 days a week.  (Doc. #8, *PageID* # 1661).  Yet, the ALJ reasonably described minimal reports of these in Plaintiff's medical record.  *See* Doc. #8, *PageID* #1605.

Plaintiff, moreover, held a part-time job for 3 years from 2010-12, janitorial work. *Id.* at 1617, 1974.  It is reasonable to consider that such work required her to be less limited than she described during the ALJ's hearing.  The ALJ also relied on the treatment notes which showed mild symptoms compared to Plaintiff's testimony of extreme difficulties.  *Id.* at 1617.

In sum, the ALJ properly evaluated Plaintiff's allegations in accordance with controlling law and reasonably concluded that they were not fully credible.  Great deference is therefore due the ALJ's assessment of Plaintiff's.  *See Walters,* 127 F.3d at 531.

Accordingly, Plaintiff's contentions regarding the ALJ's evaluation of her credibility lack merit.

### IT IS THEREFORE ORDERED THAT:

1. The Commissioner's non-disability finding is affirmed; and

2. The case is terminated on the docket of this Court.

---

[3] The Social Security Administration issued Soc. Sec. R. No. 16-3p, effective March 16, 2016, which supersedes Soc. Sec. R. No. 96-7p.  At the time of the ALJ's decision in this case, Soc. Sec. R. No. 96-7p was still in effect.

March 31, 2017                                   *s/Sharon L. Ovington*
                                                Sharon L. Ovington
                                                United States Magistrate Judge